UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAMES LEGGINS                                                                                    PLAINTIFF

v.                              Civil No. 6:14-CV-06103-SOH-BAB

DR. VOWELL AND MS.                                                                         DEFENDANTS
RAY (Nurse)

### REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, James Leggins, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants'[1] Motion for Summary Judgment. ECF No. 52. A hearing was held on July 14, 2016, to allow the Plaintiff to give a sworn oral statement in response to the Motion. ECF No. 69. After careful consideration of the briefing and sworn statement of the Plaintiff, the undersigned makes the following Report and Recommendation.

1.     **BACKGROUND**

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") Ouachita River Unit. Plaintiff suffers from glaucoma and is under the care of physicians at the UAMS Jones Eye Institute ("JEI"). He alleges denial of medical care because he was not placed

---

[1] Plaintiff filed a Motion to Dismiss a number of Defendants on July 10, 2015. ECF No. 43. This Motion was granted on January 11, 2016. ECF No. 48. At his deposition (ECF No. 54-5, pp. 9-10) and at his Summary Judgment Hearing, Plaintiff testified his case was limited to claims against Dr. Vowell and Ms. Ray.

1

in housing where he can dim the lighting per the recommendations of JEI physicians. ECF No. 1, p. 7. He further alleges there were delays in ordering his prescribed medications, and at times sufficient supplies were not ordered. ECF No. 1, pp. 7-8. The only medication specifically mentioned in his Complaint is artificial tears. Other eye drops are referenced, but not identified. ECF No. 1, p. 7. Plaintiff did not clearly identify what claims were directed against which Defendant in his Complaint.

Plaintiff testified at a deposition on August 4, 2015. ECF No. 54-5. Plaintiff testified his claim against Defendant Ray was for failing to order his medication in a timely manner. Plaintiff could not recall exactly which medications were not ordered timely. He first stated it was artificial tears and prednisone. When questioned, he stated he might be wrong, it might have just been the artificial tears. He stated he could not say she failed to order the prednisone. ECF No. 54-5, pp. 22-23. Plaintiff testified he did not know if Defendant Ray had the authority to write prescriptions to obtain medication. ECF No. 54-5, p. 24. Plaintiff testified he did not file any grievances against Defendant Ray concerning her alleged failure to order his artificial tears. ECF No. 54-5, p. 24. He testified this was his only claim against Defendant Ray. ECF No. 54-5, pp. 24-25.

Plaintiff testified his claim against Defendant Vowell was for failing to order and prescribe his eye drops as ordered by his outside medical providers at JEI. ECF No. 54-5, p. 33. Plaintiff was asked if the first time he was examined by Defendant Vowell for his eyes was in August of 2013. Plaintiff agreed it was "somewhere along in there." ECF No. 54-5, p. 42. Plaintiff further testified he had not seen Defendant Vowell since December of 2013. He testified he is not continuing under her care, because he never sees her when he goes to medical. Instead, she lets the nurses examine him, the nurses talk to her, and then the nurses come back and bring the

information to him. ECF No. 54-5, pp. 42-43. He testified she first did something wrong against him in February or March of 2014. He is suing her for her actions starting in 2014. ECF No. 54-5, p. 43. He testified she takes his eye drops from him and gives them to him the way she wants to, not the way they are prescribed. ECF No. 54-5, p. 33.

Plaintiff testified he was first diagnosed with glaucoma when he was in the Pine Bluff Unit in 2010. ECF No. 54-5, p. 17. He had eye surgery in November 2013. He testified he was given sunglasses to wear after he had the surgery. Therefore, Defendant Vowell did not need to prescribe sunglasses for him. He already had some starting November 2013. ECF No. 54-5, p. 30. Plaintiff testified his JEI doctor recommended dimmer lighting on March 12, 2014. ECF No. 54-5, p. 31. When asked why wearing sunglasses did not provide sufficiently dimmed light, Plaintiff testified he could not wear sunglasses while he was sleeping because he might break them. He also could not wear them in the shower. ECF No. 54-5, pp. 32-33. Plaintiff claimed he filed many grievances against Defendant Vowell, but it was "impossible" for him to give any type of information on "the dates and times and all of that." ECF No. 54-5, pp. 36-37. He further testified he did not appeal the final steps on all of his grievances against Defendant Vowell. ECF No. 54-5, p. 52. Plaintiff testified Defendant Vowell did not administer medicine. ECF No. 54-5, p. 44. When asked what Plaintiff would like the Court to do for him, Plaintiff replied he needed to be somewhere where he could go to the pill window and get his medications without any hassle. ECF No. 54-5, p. 49.

Plaintiff appeared by videoconference and gave a sworn statement in response to the Summary Judgment Motion on July 14, 2016.[2] Plaintiff testified he had been in the Ouachita River Unit since 2013. Plaintiff testified his claims were only against Defendants Vowell and Ray.

---

[2] As this was a sworn oral response to a Motion for Summary Judgment the Court did not allow cross examination of Plaintiff.

3

Plaintiff testified his claims against them arose in February or March 2014.

When asked of his complaints against Defendant Vowell, Plaintiff testified Defendant Vowell did not change medications as prescribed by JEI physicians from March 12, 2014 to June 18, 2014. He went to JEI again, and she still did not change his prescriptions from June 18, 2014 to August 20, 2014. He went to JEI again, and on August 20, 2014, a nurse had to go to the doctor and get her to sign the change in prescription. He testified he went five or six months without the medication prescribed by JEI, and it cost him his eyesight. When asked if he did not get eye drops for five months, Plaintiff replied he got his eye drops, but not the medication Latanoprost as prescribed by JEI.

Plaintiff testified that Defendant Vowell was the doctor on staff at ORCU. When asked if he has any issues or problems in seeing her, Plaintiff replied "I never saw her. At no time. One of the nurses always saw me." The Court asked if that meant he had not had any personal contact with Defendant Vowell. Plaintiff replied "No. I did not. None whatsoever." The Court asked if Plaintiff had ever filed a grievance against Defendant Vowell. Plaintiff replied "Yes. But they stole all my paperwork." When asked who "they" referred to, Plaintiff stated he did not know who stole it because he could not see. "They send me to medical and when I come back it's gone."

Plaintiff was asked when he filed grievances against Defendant Vowell. Plaintiff replied it was March or April of 2014. He testified he got a response. They found her negligent for not giving meds. He testified he appealed, and they found she was wrong. The Court asked Plaintiff to identify what else Plaintiff did wrong, other than not ordering medication for him. Plaintiff replied "everything she did was improper." Plaintiff was asked about the low light issue. Plaintiff testified he could have low light in the "hotel" barracks, but they moved him. Plaintiff was asked

if Defendant Vowell prescribed his dark glasses. Plaintiff replied "No. The JEI doctor gave me these. She wrote a request to get some, but I already had some." Plaintiff went on testify that "She never saw me. Had a nurse see me, and sent me on my way. And I got the big medical copay for that."

The Court then asked about Defendant Ray. Plaintiff testified "Nurse Ray was the one who orders meds after Vowell signed off on. She knew what I was supposed to get." When asked what else Defendant Ray did, Plaintiff replied "not ordering my medication." The Court asked if Plaintiff had filed any grievances against Defendant Ray. Plaintiff replied "Yes." When asked what happened with those grievances, Plaintiff replied "'they' stole all my grievances."

Plaintiff was asked what other medications he was supposed to get, other than Latanoprost. Plaintiff replied Timerol and artificial tears. Plaintiff did not know which one it was. Plaintiff was asked when he got the dark glasses. Plaintiff replied "October or November 2013."

## 2.     LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

5

256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**3.     DISCUSSION**

    **A.     Exhausted Grievances Against Each Defendant**

Defendants argue Plaintiff lawsuit is limited to his administratively exhausted claims against each Defendant.  ECF No. 53, pp. 4-8.

Plaintiff identified only one grievance filed against Defendant Ray in his discovery responses.  ECF No. 54-1.  This grievance is OR-14-00171, and alleges Defendant Ray failed to order his medication.  ECF No. 53, p. 7; 54-4, pp. 1-4.  This grievance was exhausted on May 19, 2014.  ECF No. 54-4, p. 1.

Plaintiff identified three grievances filed against Defendant Vowell which were relevant to this lawsuit in his discovery responses.  ECF No. 54-2.  These are OR-14-00215, OR-14-00394, and OR-14-01100.  Defendants correctly argue Plaintiff failed to exhaust OR-14-00215 against Defendant Vowell because she was not named in the grievance.  ECF No. 53, p. 7.

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before an inmate files suit.  Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

6

"[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*; *Burns v. Eaton,* 752 F.3d 1136, 1141 (8th Cir. 2014).

Administrative Directive 12-16 ("AD 12-16") governs the ADC grievance procedure. ECF No. 54-3. Administrative Directive 12-16(IV)(C)(4) states: "Grievances *must specifically name each individual involved for a proper investigation and response to be completed by the ADC*. Inmates must fully exhaust the grievance prior to filing a lawsuit. Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court for failure to exhaust against all parties." ECF No. 54-3, p. 4. (Emphasis added.) Administrative Directive 12-16(IV)(E)(2) requires that a Unit Level grievance must contain a brief statement "that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." ECF No. 54-3, p. 5.

A review of OR-14-00215 reveals Plaintiff did not name Defendant Vowell. Instead, Plaintiff grieved against staff member McHan for his continued exposure to excessive light. Because Plaintiff did not name Defendant Vowell in OR-14-00215, he did not exhaust this grievance against her. Because Plaintiff did not exhaust this grievance against Defendant Vowell, any claim based on it should be dismissed.

**B.    Defendant Ray**

In OR-14-00171, Plaintiff alleges he returned from JEI on February 10, 2014 with

prescriptions. He alleges Ms. Ray ordered his medication on February 10, 2014, but he had not received it as of February 18, 2014. ECF No. 54-4, p. 4. The final response to the appeal notes Dr. Vowell ordered his medications as prescribed on February 10, 2014. However, the Dorzalamide drops needed to be reordered on February 17, 2014. ECF No. 54-4, p. 1. At his deposition, Plaintiff testified his claim against Defendant Ray was for failing to order his medication in a timely manner. At his summary judgment hearing, Plaintiff testified "Nurse Ray was the one who orders meds after Vowell signed off on. She knew what I was supposed to get." When asked what else Defendant Ray did, Plaintiff replied "not ordering my medication."

Defendants argue Defendant Ray was not involved in the ordering process, as indicated on the appeal response. ECF No. 53, p. 10. Defendants provided an affidavit from Dr. Robert Floss, the Regional Medical Director for Corizon and Correct Care. He stated the February 10, 2014 order was placed by Dr. Vowell. He further stated Nurse Ray did not enter or fail to enter any prescriptive orders on February 10, 2014. Finally, he stated that, as a nurse, Defendant Ray could only enter prescriptive orders at the direction of a physician. ECF No. 54-7.

Based on this evidence, Defendant Ray was not involved in ordering Plaintiff's medications on February 10, 2014. Further, she did not have the authority to do so. Plaintiff's claim against her should therefore be dismissed, as she is not a proper Defendant for this claim. *See Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994) ("if any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [Plaintiff's] medical care.")

    **C.**    **Defendant Vowell**

As discussed above, Plaintiff exhausted two grievances against Defendant Vowell: OR-14-00394 and OR-14-01100. OR-14-0039 claims he was being housed in a location with excessive

lighting, which harmed his eyes. ECF No. 54-4, p. 11. In OR-14-01100 he claims he was prescribed Latanoprost eye drops by JEI on August 20, 2014, and, as of September 21, 2014, he was still not getting them. ECF No. 54-4, p. 14.

Regarding his lighting claim, Plaintiff stated he and Defendant Vowell had discussed the pain he was suffering due to the high light levels the week before he filed the grievance. The Step One grievance is dated April 15, 2014.[3] This claim was denied as without merit. Although not exhausted against Defendant Vowell, OR-14-00215 also grieved the bright light and provides some additional detail underlying Plaintiff's claim for low light levels. In the final reply to Plaintiff's appeal, a reference was made to a March 12, 2014, JEI recommendation that Plaintiff be moved to a darker room due to light sensitivity. The appeal was found to be without merit because Plaintiff had been provided with dark sunglasses. ECF No. 54-4, pp. 5-8. Thus, Plaintiff's claim against Defendant Vowell for lighting appears to be that his JEI doctors recommended he be housed in low lighting and he was instead only provided with dark sunglasses.

Defendants provided copies of Plaintiff's medical records to the Court. On April 2, 2014, a notation in the medical record by Dr. Vowell notes Plaintiff is being followed for persistent corneal irritation at JEI. "It has been recommended that his eye irritation may have some symptomatic relief with a low light room." Defendant Vowell stated security concerns prevented low light barracks or rooms, and further noted low light rooming is not a necessary medical intervention. However, she ordered dark glasses "that will provide a mobile dark environment for his comfort. Otherwise he would not be able to sit in the cafeteria or go to the gym." ECF No. 54-6, p. 17. A receipt for medical products indicates Plaintiff received dark glasses on April 17,

---

[3] Plaintiff testified at his deposition he had not seen Defendant Vowell in person since December of 2013. In his hearing testimony Plaintiff stated he had "at no time" seen Dr. Vowell, and had not had any personal contact with her. He always saw the nurses.

2014. ECF No. 54-6, p. 18.

In his deposition, Plaintiff was asked why wearing sunglasses did not provide sufficiently dimmed light. Plaintiff testified he could not wear sunglasses while he was sleeping because he might break them. He also could not wear them in the shower. ECF No. 54-5, pp. 32-33. At his summary judgment hearing, Plaintiff testified he had already received dark glasses from JEI. He testified Defendant Vowell wrote a request, but he already had some. Plaintiff further testified he was allowed to have a low light room in the "hotel" barracks, but they moved him from there.

Based on this evidence, Plaintiff received appropriate medical care for his light-sensitive eyes. Plaintiff merely disagrees with the treatment, and such disagreement is not actionable. *See Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.") (internal quotation marks and citations omitted).

Plaintiff's second claim against Defendant Vowell is based on her alleged failure to order his Latanoprost eye drops. The final response to the grievance notes Plaintiff was prescribed Latanoprost (name brand Xalatan) on August 20, 2014. Dr. Vowell ordered the drops on August 20, 2014, and they were received from the pharmacy on August 21, 2014. The appeal was found to be with merit, because the drops had been ordered and received, but there was no record they were actually administered to Plaintiff. They were reordered on September 23, 2014, and Plaintiff was administered the drops on September 24, 2014. ECF No. 54-4, p. 12. Defendant supplied a copy of a drug prescription order dated August 20, 2014. It indicates Dr. Vowell ordered Xalatan (Latanoprost) drops on August 20, 2014. The drops were received on August 21, 2014. ECF No. 54-6, p. 23.

In his affidavit, Dr. Floss stated it was not Defendant Vowell's responsibility to administer

medication, and she had no duty to follow-up and make sure it was being administered. Dr. Floss further stated Plaintiff should have notified infirmary staff if he was not getting his medication as prescribed. ECF No. 54-7, p. 2. At his deposition, Plaintiff testified Defendant Vowell did not administer medicine. ECF No. 54-5, p. 44. At his summary judgment hearing, Plaintiff testified he had no personal contact with Defendant Vowell, "none whatsoever." He testified "he never saw her."

Plaintiff's claim that Defendant Vowell failed to order his medications is contradicted by the evidence in the record. To the extent his grievance was found to be with merit because there was a delay in administering the medication to him, Defendant Vowell is not the proper Defendant for this claim. Plaintiff's claim against her for failure to order or administer his Latanoprost eye drops should therefore be dismissed. *See Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994) ("if any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [Plaintiff's] medical care.")

### 4. CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 52) be **GRANTED** and Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 20th day of July 2016.**

              /s/ Barry A. Bryant
              HON. BARRY A. BRYANT
              UNITED STATES MAGISTRATE JUDGE